UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:00CR170(SRU) |
| vs. | : | NO. 3:05CV532(SRU) |
| DARRIN LMINGGIO | : | June 1, 2005 |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**GOVERNMENT'S REQUEST FOR AN ORDER**

**I   BACKGROUND**

On December 18, 2000, Darrin Lminggio entered a plea of guilty to Count One of an indictment charging a drug conspiracy in violation of 21 U.S.C. § 846. He was sentenced on April 9, 2001, principally to 165 months imprisonment, followed by 5 years of supervised release. Lminggio was represented throughout these proceedings by then Assistant Federal Defender, Sarah A. Chambers.

On March 28, 2005, Mr. Lminggio filed a pro se motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. One of the claims he asserts is that Attorney Chambers rendered ineffective assistance by failing to appeal his sentence in spite of his alleged request that she do so.

The government has been ordered to file its response on or before June 5. On May 4 it filed a Motion asking the Court to (1) find that the Petitioner's claim of ineffective assistance of counsel operates as a waiver of the attorney-client privilege; and (2) order Attorney Chambers to file an affidavit setting forth her discussions with the petitioner regarding an appeal and to provide any relevant documents from her file. The Federal Defender Office has moved to intervene on the basis that it has an interest in protecting its clients' privileges and the confidentiality of its files.

**II   DISCUSSION**

    **A.   Implied Waiver**

Counsel does not dispute the long standing rule a litigant implicitly waives the attorney-client privilege by putting his lawyer's performance at issue during the course of litigation. Hunt v.

- 2 -

Blackburn, 128 U.S. 464, 470-71 (1888) ("When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and [her lawyer] and respecting which she testified, she waived her right to object to his giving his own account of the matter"). Stated simply, the attorney client privilege cannot at once be used as both a shield and a sword. In re vonBulow, 828 F.3d 94, 103 (2d Cir. 1987). The implied waiver rule is based on the principle of fairness. United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.") Thus, with regard to the government's first request, the court could, in its discretion, find that by asserting that Attorney Chambers ignored his request to file an appeal, the petitioner has waived the privilege he might otherwise have been entitled to concerning any conversations or documents regarding the filing of an appeal. See United States v. Jacobs, 117 F.3d 82, 89 (2d Cir. 1997) (the issue of waiver is in the first instance for the court's discretion).

### B.    Petitioner's Options

Before Attorney Chambers is ordered to disclose privileged communications and turn over documents from petitioner's file[1] Mr. Lminggio should be afforded the opportunity to withdraw his claim of ineffective assistance.

> [T]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege. Privileged Communications, 98 Harv. L. Rev. at 1630. The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials **if** he wishes to go forward with its claim implicating them. The court thus gives the holder of the privilege a choice. If you want to litigate this claim then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. (emphasis in original)

Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003).

Thus, if the Court is inclined to find a waiver, it should so advise the petitioner prior to ordering disclosure, and afford him the opportunity to maintain the confidentiality of his conversations by

---

[1] This file is in the possession of the Federal Defender Office, not Attorney Chambers.

- 3 -

withdrawing his claim of ineffective assistance. This is especially so where, as here, petitioner is proceeding pro se and may be unaware of the consequences of raising and pursuing such a claim.

### C. The Need For The Materials

In view of the fact that the "animating principle" behind a waiver is fairness to the parties, if the Court finds that the privilege is waived, then that waiver should be narrowly tailored to remedy any prejudice to the government. In re Grand Jury Proceedings, 219 F.3d 175, 188 (2d Cir. 2000); see also Bittaker, 331 F.3d at 720 ("Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question.")

There appears to be little need for the disclosures that the government seeks here, at least at this stage of the proceeding. As pointed out in its Request, "[T]he government believes the Court can summarily deny the petition on the basis of the Court's advice to the defendant concerning appellate rights at the time of sentencing." (Gov't Request at 1). In light of this, the government asserts merely that it would be "preferable" (as opposed to necessary) that the record be supplemented by an affidavit from counsel and documents from the file. An implied waiver of a valued privilege should not be based on a finding, not of need, but that it is the preferred course of action. In the absence of an assertion of actual need, no actual prejudice would result from a denial of the government's request, and a waiver of the attorney client privilege would not be necessary to ensure fairness.

Moreover, this petition was filed almost four years after petitioner was sentenced and well beyond the one year period of limitation provided for in 28 U.S.C. § 2255. See Weaver v. United States, 195 F.3d 123 (2d Cir. 1999). It appears that the Court could summarily deny the petition (and the government's request) on this basis as well.

If a summary dismissal were entered for either or both of these reasons, there would be no need to order disclosure of the privileged materials. The undersigned respectfully suggests that both justice and judicial economy would best be served, and the sanctity of the attorney-client privilege best protected, by requiring the government to seek a summary denial of this petition before it is allowed to

- 4 -

rummage through the thought processes and file of petitioner's former counsel

### D. Attorney Chambers' Options

In the Second Circuit, an attorney who has assertedly rendered ineffective assistance should, except in highly unusual circumstances, be afforded an opportunity to be heard and present evidence regarding his or her performance, in the form of live testimony, affidavits or briefs. McKee v. United States, 167 F.3d 103, 108 (2d Cir. 1999); Bloomer v. United States, 162 F.3d 187, 194 (2d Cir. 1998); Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998). Providing an attorney the opportunity to explain her conduct is, however, a far cry from issuing an order requiring her to do so. The government cites no case in which an order similar to that which they are requesting here has been granted. In the cases listed on pp. 2-3 of the Request, it appears that the affidavits referred to were voluntarily supplied by the attorneys, not ordered by the Court. See, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (record was supplemented by an affidavit submitted by counsel at the request of the Court). Attorney Chambers should be given the option of submitting an affidavit if she so desires, but no order requiring her to do so should be issued in the absence of a showing of need on the part of the government.

### E. Documents From Petitioner's File

The documents that the government seeks from Petitioner's file constitute his attorney's work product and as such are privileged on that ground as well. Strong public policy considerations underlie the work product privilege. The Supreme Court has noted that in the absence of this privilege, much of what is now put in writing would remain unwritten and the effect on the legal profession would be "demoralizing". Hickman v. Taylor, 329 U. S. 495, 510 (1947). The work product doctrine is distinct from and broader than the attorney-client privilege. United States v. Nobles, 422 U. S. 225, 238. (1975). It applies in the criminal, as well as civil, context. Id. At 238.

A party seeking discovery of an attorney's work product must show a "substantial need" for fact related documents. In re Grand Jury Proceedings, 219 F.3d at 190, With regard to work product that shows mental impressions, conclusions, opinions, or legal theories of an attorney, such material is

- 5 -

protected unless a "highly persuasive" showing of need is made. Id.

The government here has not demonstrated the level of need necessary under either of these standards to defeat the work product privilege. As noted, a summary denial should easily be available, thereby eliminating any need to reach the issue of whether the privilege has been waived or to authorize the government to invade the privacy of counsel's file.

**III. Conclusion**.

For all of the foregoing considerations, the undersigned requests that the government's motion be denied.

Respectfully submitted,

Dated: June 1, 2005       /s/
                          Thomas G. Dennis
                          Federal Defender
                          10 Columbus Blvd, FL 6
                          Hartford, CT 06106-1976
                          Bar No. ct05100
                          (860) 493-6260

CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing has been mailed to James I. Glasser, Assistant United States Attorney, P.O. Box 1824, New Haven, CT 06508, Sarah Chambers, Esq., Office of the Bar Counsel, 99 High Street, Boston, MA 02110; Darren Lminggio, Prisoner No. 13952014, Federal Correctional Institution, Medical Center, Springfield, MO, on this 1 day of June 2005.

/s/
Thomas G. Dennis